**FILED**
**Jun 03, 2019**
**01:44 PM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| MARTEAN HOGAN,<br>　　　　Employee, | ) Docket No. 2018-08-1030 |
| v. | ) |
| HEALTH CONNECT AMERICA,<br>　　　　Employer, | ) State File No. 70572-2017 |
| and | ) |
| BRIDGEFIELD CASUALTY INS. CO.,<br>　　　　Carrier. | ) Judge Allen Phillips |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

Ms. Hogan requested that Health Connect pay for a surgery she claimed was necessary because of an automobile accident. Health Connect denied the accident caused her need for surgery. After an Expedited Hearing on May 22, 2019, the Court holds Ms. Hogan established she would likely prevail at a hearing on the merits regarding her request.

### History of Claim

On September 14, 2017, Ms. Hogan was involved in an automobile accident while traveling for her job. Her vehicle was struck from behind. Initially, she continued her duties but later sought emergency care. She described feeling "pressure . . . like a three hundred pound person was sitting on her neck." She also complained of pain in her left shoulder. After an MRI on September 29, Health Connect provided Ms. Hogan a panel of physicians. She chose Dr. Samuel Schroerlucke, an orthopedic surgeon who specializes in spinal conditions.

On October 3, Dr. Schroerlucke diagnosed a C6-C7-level herniation with stenosis and testified in his deposition that the condition was "primarily related" to the September 14 accident. He recommended conservative care through the fall and on December 5 anticipated Ms. Hogan would reach maximum medical improvement (MMI) by year end. He did not anticipate she would need surgery, and he allowed her to return to work on December 11.

1

On January 2, 2018, Ms. Hogan had a second, non-work-related automobile accident. At an emergency room visit the next day, a physician recorded that Ms. Hogan complained of pain in various areas including her neck. She told the physician that she had a "bulging disc in her neck from a previous MVA in September." The emergency room physician informed Ms. Hogan to follow-up with both Dr. Schroerlucke and her primary care provider.

On January 4, Ms. Hogan returned to Dr. Schroerlucke. He noted the accident two days before. Later, during his deposition, he testified that it caused a "significant flare-up" of her symptoms. However, he further testified Ms. Hogan "completely recovered" from the January 2 accident by January 16 and that her symptoms had returned to a "baseline" of what they were before. Dr. Schroerlucke maintained that Ms. Hogan's symptoms stemmed from the first accident.

Dr. Schroerlucke continued conservative management of Ms. Hogan's condition including a steroid injection in February; it did not help. On March 6, he recommended an EMG study of Ms. Hogan's left arm to look for radiculopathy. Dr. Schroerlucke said if the EMG showed radiculopathy, then "I think the next step is surgery," namely a fusion of the C6-C7 level. However, he added that even if the EMG *did not* show radiculopathy, then surgery might still be the next step. He stated in his note that Ms. Hogan was "very upset to hear this."

The EMG was normal, but Ms. Hogan continued to complain of pain. Thus, Dr. Schroerlucke recommended a repeat MRI of her cervical spine.

Before she returned for the MRI results, Ms. Hogan was involved in a third automobile accident on April 4. When she returned on April 5, she did not tell Dr. Schroerlucke about the accident the day before. At the hearing, she explained that the accident was minor, a "side-swipe," and that it caused no injury. But at the doctor's office, Ms. Hogan described a stabbing pain and a feeling of "pressure" in her neck. Dr. Schroerlucke noted her pain had "been present for 7 months" in "the context of an injury at work" and also said the new MRI was not significantly different than the first. Considering Ms. Hogan's condition on April 5, Dr. Schroerlucke recommended a C6-C7-level fusion.

Following Dr. Schroerlucke's surgical recommendation, Health Connect obtained an independent medical evaluation from Dr. John Lochemes, an orthopedic surgeon specializing in general orthopedics. Contrary to Dr. Schroerlucke, Dr. Lochemes testified by deposition that he was "certain that the disc pathology [was] not the source" of Ms. Hogan's symptoms based on his review of the second MRI. Instead, he thought she suffered from "nerve pain" caused by either neuralgia or neuritis. That being the case, Dr. Lochemes did not believe surgery would resolve Ms. Hogan's symptoms, and he added that the work accident would "certainly" not be the precipitating cause for surgery even if it were necessary. Instead, he attributed "greater than 50 percent" of Ms. Hogan's

2

symptoms to the January accident, calling them worse than before, or "a new set of symptoms."

Dr. Lochemes noted Ms. Hogan might seek another opinion from a neurosurgeon regarding surgery but added that this recommendation was not "out of disrespect for the certification and qualifications of Dr. Schroerlucke." Though Dr. Lochemes disagreed with Dr. Schroerlucke, he testified he "would take into account" that Dr. Schroerlucke was a treating physician, "present . . . for the entire period of time across . . . both accidents."

Health Connect also obtained a record review evaluation from Dr. Edward Kahn, another orthopedic surgeon, and offered his report in evidence. Dr. Kahn did not believe surgery would improve Ms. Hogan's complaints based on no documentation of weakness and intact reflexes. Further, Dr. Kahn said the MRI and EMG did not show evidence of nerve root compression at the C6-C7 level.

Based on the opinions of Drs. Lochemes and Kahn, Health Connect denied the surgery.

For his part, Dr. Schroerlucke testified Ms. Hogan needed the recommended surgery because of the September 14 work accident. He testified that because she returned to her baseline symptoms, he could not "blame" the second accident for them. Specifically, he explained that "sometimes people get better for a while and then things get worse," and in this case, any aggravation caused by the second accident did not mean "her symptoms . . . can't be related to the original disc herniation." He testified he "could not say anything" regarding the April 4 accident, as Ms. Hogan did not inform him of it, but he admitted his opinions were dependent on an accurate history.

Ms. Hogan detailed her pain after the first accident and explained how it became more "intense and consistent" after the January accident. However, she said her pain never "went away" before January and that she was "still hurting" when Dr. Schroerlucke returned her to work in December. She emotionally explained that she would accept the recommended surgery because the pain prevents her from working and her only income is ongoing temporary total disability (TTD) benefits. She testified that, "I just want my life back."

Health Connect argued that these facts were controlling: 1) Ms. Hogan experienced significant improvement in her symptoms before the January accident; 2) Dr. Schroerlucke anticipated her to reach MMI by December 26; and 3) her symptoms worsened after the January 2 accident. It added a sworn declaration from Ariane Graves, a program director for Health Connect, that confirmed Ms. Hogan was able to return to work in December but could not continue after the second accident in January. Additionally, Health Connect argued the objective studies did not support the recommended surgery. Collectively, Health Connect argued these facts were sufficient to

rebut the presumption of correctness attached to Dr. Schroerlucke's opinion. *See* Tenn. Code Ann. § 50-6-102(14)(E) (2018).

Ms. Hogan countered that Health Connect did not rebut the presumption. She asserted the Court should accredit the opinion of Dr. Schroerlucke over the opinions of the other physicians under the applicable legal criteria. Specifically, she argued Dr. Schroerlucke's status as the treating physician allowed him the most contact with her and placed him in the best position to provide an accurate opinion. She also argued the two MRIs "mirrored" each other, indicating no anatomic change after the first accident. She summarized by asserting that she suffered an injury in September, suffered an aggravation in January, but then returned to her baseline symptoms caused by the first accident. She requested the Court to order Health Connect to pay for the surgery.

**Findings of Fact and Conclusions of Law**

The dispositive issue is whether Ms. Hogan established her work injury was the primary cause of her need for surgery. At this Expedited Hearing, she must show a likelihood of prevailing at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1).

Under law, a compensable injury is one that arises primarily out of the employment and causes either "disablement or *the need for medical treatment* [.]" Tenn. Code Ann. § 50-6-102(14) (Emphasis added). An injury arises primarily out of the employment only if it has been shown to a reasonable degree of medical certainty that the work contributed more than fifty percent in causing the injury when considering all causes. "Shown to a reasonable degree of medical certainty" means that it is more likely than not considering all causes. Tenn. Code Ann. § 50-6-102(14)(A)-(D).

Here, Dr. Schroerlucke directly testified that the September 14, 2017 accident was the primary cause of Ms. Hogan's need for surgery. He offered that opinion with knowledge of Ms. Hogan's subsequent accidents and of her anatomic condition, indicating his required consideration of all potential causes. Because Dr. Schroerlucke's causation opinion is presumed correct, the Court turns to whether Health Connect rebutted it by a preponderance of the evidence.

When considering the medical opinions, the Court has discretion to conclude that one should be accepted over that of the others and that it contains the more probable explanation. *Ledford v. Mid-Georgia Courier, Inc.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *8 (June 4, 2018). In evaluating the medical opinions, the Court may consider, among other things, the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by other experts. *Hollis v. Komyo Amer.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 4, at *11 (Jan. 22, 2019), *citing Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). Here, the Court agrees with Ms. Hogan that it should accept Dr. Schroerlucke's opinion.

4

First, Dr. Schroerlucke is spine specialist. While Dr. Lochemes testified that he treats all orthopedic conditions, he does not offer similar expertise. The record does not detail the qualifications of Dr. Kahn other than his being an orthopedic surgeon. Thus, the Court finds Dr. Schroerlucke the mostqualified.

Second, Dr. Schroerlucke treated Ms. Hogan after Health Connect offered him on a panel. He did not see her merely for the purpose of obtaining an opinion. Further, Health Connect obtained the opinions of Dr. Lochemes and Dr. Kahn only after Dr. Schroerlucke recommended surgery. This came after Health Connect paid for all other treatment he recommended, and Health Connect continues to pay TTD benefits because he continues to restrict Ms. Hogan from work. The Court finds the circumstances of Dr. Schroerlucke's evaluation the most compelling.

Third, Dr. Schroerlucke had the most information available to him. Dr. Schroerlucke reviewed both MRIs near the time they were made, allowing him to clinically correlate Ms. Hogan's symptoms to those findings. Dr. Lochemes reviewed only one MRI, and Dr. Kahn reviewed only reports of the MRIs. More importantly, Dr. Schroerlucke examined Ms. Hogan on multiple occasions, compared to her one visit to Dr. Lochemes and none to Dr. Kahn. "It seems reasonable that the physicians having greater contact with the plaintiff would have the advantage and opportunity to provide a more in-depth opinion if not a more accurate one." *Orman*, at 677. Here, Dr. Schroerlucke had the greater contact with Ms. Hogan, and Dr. Lochemes testified he "would take into account" that Dr. Schroerlucke saw her over the course of both accidents. The Court finds Dr. Schroerlucke had the most complete information available to him.

Fourth, the Court finds Dr. Schroerlucke's evaluation of the importance of information the most persuasive. He explained how Ms. Hogan's symptoms were present after the first accident and that he could not "blame" the second accident for them. He explained that he "can't completely forget about" the first accident and "that original disc herniation." The Court finds this opinion the "more probable explanation" for Ms. Hogan's symptoms. *See Ledford, supra.*

Finally, the Court considers the medical proof "in conjunction with the lay testimony of [Ms. Hogan] as to how the injury occurred and [her] subsequent condition." *Nance v. Randstad*, 2015 TN Wrk. Comp. App. Bd. LEXIS 15, at *9 (May 27, 2015). Here, the Court finds Ms. Hogan testified credibly and convincingly that her symptoms began after the first accident and never completely resolved. After the January aggravation, she explained her symptoms returned to a baseline as Dr. Schroerlucke described. She claimed continued disabling pain, and based on the Court's direct observation, the Court believes her and finds her credible. The Court also observed a demeanor similar to that described by Dr. Schroerlucke when he first mentioned surgery as a last resort, namely Ms. Hogan became "very upset." The Court believes Ms. Hogan's testimony that she desires surgery in an attempt to "get her life back."

5

Based on the totality of the evidence, the Court holds Ms. Hogan would likely prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED AS FOLLOWS:.**

1. Health Connect shall pay for the recommended surgery.

2. This case is set for a Status Hearing on **Monday, August 26, 2019, at 9:30 a.m. Central Time**. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Hearing. Failure to call may result in a determination of the issues without your participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED June 3, 2019.**

**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

6

# APPENDIX

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Order Setting Expedited Hearing
5. Order Resetting Expedited Hearing
6. Employee's Pre-Hearing Brief
7. Employer's Witness List and Notice of Filing

Exhibits

1. Deposition of Dr. Samuel Schroerlucke
2. Deposition of Dr. John Lochemes
3. Collective Medical Records
4. Sworn Declaration of Ariane Graves

## CERTIFICATE OF SERVICE

I certify that a copy of this Expedited Hearing Order was sent to the following recipients as indicated below on June 3, 2019.

| Name | Via Email | Service sent to: |
|---|---|---|
| Monica Rejaei, Employee's Attorney | X | mrejaei@nstlaw.com jkarpovich@nstlaw.com |
| Ryan Malone, Employer's Attorney | X | ryan@petersonwhite.com Beverly.uphoff@petersonwhite.com |

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims

7



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

**List of Parties**
**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)
**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of
Board of Workers' Compensation Appeals on this the_____day of_____, 20__.


[Signature of appellant or attorney for appellant]   _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                                 RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

Groceries       $ _____ per month     Telephone      $ _____ per month

Electricity       $ _____ per month     School Supplies $ _____ per month

Water         $ _____ per month     Clothing       $ _____ per month

Gas           $ _____ per month     Child Care     $ _____ per month

Transportation $ _____ per month     Child Support   $ _____ per month

Car           $ _____ per month

Other        $ _____ per month (describe: _____ )

10. Assets:

Automobile             $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House               $ _____     (FMV) _____

Other               $ _____     Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____